UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 07-21408-CIV-O'SULLIVAN
[CONSENT]

ODALYS PEREZ and others similarly-
situated,

      Plaintiffs,

v.

PALERMO SEAFOOD, INC., a Florida
corporation d/b/a Fico Key West Seafood,
and JUAN ZIEGGENHIRT, individually,

      Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER comes before the Court on a bench trial on February 11, 2008. The parties consented to trial before a United States Magistrate Judge. See Consent to Exercise of Jurisdiction by a United States Magistrate Judge (DE# 17, 8/9/07). This matter was referred to the undersigned by the Honorable Ursula Ungaro in accordance with 28 U.S.C. § 636(b). Id. The Court has reviewed the testimony and exhibits presented at trial and makes the following findings and conclusions:

## FINDINGS OF FACT

1.    Juan Zieggenhirt (hereinafter "defendant")[1] is the president and 25 percent owner of Palermo Seafood, Inc.

2.    Palermo Seafood, Inc. does business as Fico Key West Seafood (hereinafter

---

[1] Although Mr. Ziggenhirt and Palermo Seafood, Inc. are both defendants in the instant action, the Court will refer to Mr. Ziggenhirt as the "defendant" and Palermo Seafood, Inc. as the "restaurant." Mr. Ziggenhirt and Palermo Seafood, Inc. will collectively be referred to as the "defendants."

"restaurant").

3. The restaurant is a seafood restaurant, a fish market and a cafeteria.

4. The defendant was the manager of the restaurant.

5. The defendant hired and fired employees at the restaurant and determined their compensation. The defendant interviewed prospective employees.

6. The defendant was at the restaurant six days a week. When the defendant was not at the restaurant another manager was present. A manager was always present at the restaurant.

7. The defendant knew he had an obligation to pay overtime and minimum wage.

8. The restaurant was open seven days a week. The cafeteria was open from 7:00 a.m. to 9:00 p.m. The sit-down section of the restaurant was open from 11:00 a.m. to 10:00 p.m. on weekdays and 11:00 a.m. to 11:00 p.m. on weekends.

9. Odalys Perez (hereinafter "plaintiff") was employed as a waitress at the restaurant from March 13, 2006[2] to February 25, 2007.[3]

10. The plaintiff worked in the cafeteria. The cafeteria consisted of a counter inside the restaurant and a window where customers outside the restaurant could place their

---

[2] The plaintiff testified that she began working at the restaurant in mid-March 2006. Although the plaintiff does not remember the exact date she began working at the restaurant, her application for employment is dated March 11, 2006 (Plaintiff's Exhibit 5 at 2). According to the plaintiff, she was interviewed by the defendant a few days later and the defendant dated the front page of her application as March 13, 2006. Id. Thus, the Court can reasonably infer from the evidence presented at trial that the plaintiff began her employment with the defendants on or about March 13, 2006.

[3] In his initial responses to interrogatories, the defendant stated that the plaintiff's last day was April 14, 2007. However, the defendant amended this answer after reviewing payroll records.

orders.

11.	The plaintiff worked two shifts during the workweek. The first shift was from 7:00 a.m. to 3:00 p.m. on Monday and Tuesday. The second shift was from 9:00 a.m. to 9:00 p.m. from Thursday through Sunday. The plaintiff did not work on Wednesday.

12.	Although her shift started at 7:00 a.m. on Monday and Tuesday, the plaintiff arrived at the restaurant at 6:00 a.m. to prepare orange juice, cook pastries, croquettes and other foods and fill the condiment containers before the restaurant opened at 7:00 a.m.

13.	On Monday and Tuesday, the plaintiff's shift ended at 3:00 p.m. The plaintiff stayed at the restaurant until approximately 3:30 p.m. because she had to take inventory of the cigars and cigarettes and wait for the defendant's wife to balance the cash register. After the cash register was balanced the plaintiff would receive her tips from credit card purchases.

14.	When the plaintiff worked the 9:00 a.m. to 9:00 p.m. schedule, she would attend to customers ordering at the counter and take telephone orders. She did not take orders from the window.  She would occasionally help with the fish market when they were short an employee.

15.	During the first month of her employment, the plaintiff left the restaurant around 9:15 or 9:20 because she had to take inventory of the cigars and cigarettes, disassemble, clean and reassemble the juicer and wait for the defendant's wife to balance the cash register. During the first month, the plaintiff did not clean the restaurant because the restaurant had a cleaning crew in the evenings.

16.	After the first month, the restaurant no longer employed a cleaning crew. The

plaintiff would clean the restaurant in addition to her other duties. As a result, the plaintiff left the restaurant around 9:45 p.m.

17. At the end of each shift, when the cash register was balanced, the plaintiff was paid her credit card tips in cash. Sometimes the tips were placed in a tip jar.

18. During her employment with the defendant, the plaintiff was sick about three times. There was an additional week when the plaintiff worked Monday through Thursday because she was visiting her brother. Thus, there were four weeks when the plaintiff did not work overtime at the restaurant.

19. The defendant used time cards to keep track of the hours worked by employees. The time cards do not accurately reflect the total hours worked by the plaintiff. Some of the time cards are illegible. Other time cards show erratic hours and do not correspond with the shifts worked by the plaintiff. For example, one time card reflects that the plaintiff began work at 3:52 p.m. and left at 9:10 p.m. Another time card reflects that the plaintiff began work at 11:56 a.m. and left at 2:02 p.m.

20. The plaintiff was paid $3.38 an hour plus tips in 2006 and $3.65 per hour plus tips in 2007.

21. On average, the plaintiff earned $25 to $30 per day in tips on Mondays and Tuesdays during the 7:00 a.m. to 3:00 p.m. shift and $50.00 per day in tips on Thursdays through Sundays when she worked the 9:00 a.m. to 9:00 p.m. shift.

22. The plaintiff was paid biweekly.

23. For the first three months of the plaintiff's employment, the defendant paid the plaintiff's wages in cash.

24. In June 2006, the defendant began paying a portion of the plaintiff's wages

through the issuance of a payroll check. The remainder of the plaintiff's wages were paid in cash. Prior to this, all of the plaintiff's wages were paid in cash.

25. The defendant outsourced its payroll functions to Gevity. For each pay period, the defendant would report to Gevity the number of hours worked by certain employees.

26. The defendant underreported the total hours worked by the plaintiff per pay period. Only a portion of the hours worked by the plaintiff were reported to Gevity. The cash payments made to the plaintiff were not reported to Gevity. The defendant did not keep any records of the cash payments made to the plaintiff or the hours that the plaintiff worked that were not reported to Gevity.

27. The plaintiff was not paid time and a half when she worked overtime.

## CONCLUSIONS OF LAW

### Jurisdiction and Venue

1. This is an action for minimum wage and overtime violations under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201, et seq. The plaintiff also makes a claim under the Florida Minimum Wage Act. Fla. Stat. § 448.110.

2. This Court has jurisdiction over the subject matter and the parties pursuant to the FLSA. The parties do not dispute that venue properly lies in the Southern District of Florida.

### FLSA

3. The FLSA was enacted in 1938 in order to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. . . ." 29 U.S.C. § 202(a), (b). Antenor v. D&S Farms, et al., 88 F.3d 925, 929 (11th Cir. 1996).

4. The FLSA applies to enterprises with employees who engage in interstate commerce, produce goods for interstate commerce, or handle, sell or work on goods or materials that have been moved in or produced for interstate commerce.

5. Under the FLSA, employers must keep payroll records and pay employees a minimum hourly wage and overtime. 29 U.S.C. §§ 201-11. <u>Antenor</u>, 88 F.3d at 929.

6. Florida's minimum wage is guaranteed by the Florida Constitution. Fla. Const. Art. 10, § 24. The Florida Minimum Wage Act, Fla. Stat. § 448.110 "provide[s] measures appropriate for the implementation of s. 24, Art. X of the State Constitution." Fla. Stat. § 448.110 (2).

7. "The provisions of §§ 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated [in the Florida Minimum Wage Act]." Fla. Stat. § 448.110 (3).

**Defendant's Status as Employer**

8. Under the FLSA, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." <u>Patel v. Wargo</u>, 803 F.2d 632, 637-38 (11th Cir. 1986) (citing <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1511 (1st Cir. 1983)).

9. The defendant is an "employer" for FLSA liability purposes. Based on the evidence adduced at trial, the Court finds that the defendant exercised control over the business, financial and employment affairs of the restaurant. The defendant was at the

restaurant six days a week as a manager supervising employees including the plaintiff. The defendant hired and fired employees and determined the restaurant's policies including that the restaurant would not pay overtime.

**Burden of Proof**

10.     An employee who brings a lawsuit under the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages bears the initial burden of proving that she performed the work for which she was not properly compensated. Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1328 (S.D. Fla. 2001) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946), superceded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972)).

11.     In Mt. Clemens, the Supreme Court recognized that "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records," but "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." 328 U.S. at 687. In "such a situation . . . an employee has carried out his burden if he proves that he has in fact performed the work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. The "burden then shifts to the employer to come forward with the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-88. Where the "employer fails to produce such evidence, the court may then award damages to the employee, even though the

result be only approximate." Id. at 688.

12. The defendant's records are inaccurate and unreliable. For approximately three months, the defendant paid the plaintiff's wages in cash and kept no records of the plaintiff's wages. In June 2006, the defendant began maintaining time records of the hours the plaintiff worked. The time records only represent a portion of the actual hours worked by the plaintiff during this period since the defendant continued to pay a portion of the plaintiff's wages in cash.

13. "Where the inaccuracy [of records] is due to the employer's failure to keep adequate records as required by statute, and the employee has demonstrated that some work was performed for which he was improperly compensated, there is a right to recovery, even though the amount may be uncertain and damages difficult to calculate." Leonard v. Carmichael Props. & Mgmt. Co., 614 F. Supp. 1182, 1186 (S.D. Fla. 1980) (citation omitted; emphasis in original).

14. The plaintiff has met her burden by establishing through credible testimony at trial that she performed the work for which she was improperly compensated. Namely, the plaintiff was not compensated at the rate of one and a half times her regular rate of pay for the hours she worked in excess of forty hours. The defendant has failed to come forward with credible evidence of the actual number of hours worked by the plaintiff or with proof to negate the reasonableness of the inference drawn from plaintiff's evidence.

**The Plaintiff's Minimum Wage and Overtime Claims**

15. The FLSA requires that employers pay employees a minimum wage, establishes

the maximum hours that an employee can work at a regular pay rate, and requires overtime pay for hours worked in excess of forty hours per workweek. 29 U.S.C. § 201, et seq.

16.     Pursuant to the FLSA, a "'[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The parties do not dispute that the plaintiff earned more than $30.00 a month in tips.

17.     Under the FLSA, employers of tipped employees (i.e. those who customarily and regularly receive more than $30 a month in tips) may consider such tips as part of their wages, but employers must pay a direct wage of at least $2.13 per hour if they claim a "tip credit." The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit."

18.     The Florida minimum wage law also allows a "tip credit." The "tip credit" allowed by Florida law is the same as that allowed by the FLSA, $3.02. Fla. Const. Art. 10, § 24 (c).  The reduced cash wage allowed for tipped employees under the Florida minimum wage law was $3.38 per hour ($6.40 minus $3.02) in 2006 and $3.65 per hour ($6.67 minus $3.02) in 2007.

19.     The following requirements must be met to satisfy the "tip credit" in Section 203(m): (1) the tip credit must be claimed for qualified tipped employees; (2) the employees must receive proper notice of Section 203 (m) and (3) all tips received by

the employees must be retained by them.[4] 29 U.S.C. § 203(m). The Florida law on "tip credit" is the same as that of the FLSA. Fla. Const. Art. 10 § 24; Fla. Stat. § 448.110.

20.     The FLSA requires employers to pay covered employees not less than one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek, unless the employees are otherwise exempt.

21.     The Supreme Court has defined the term "regular rate" as referring to the "hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945). The Department of Labor has adopted this definition and stated that the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107-108.

22.     According to the Department of Labor, the "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." Id. at § 778.109. See also Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1256 (11th Cir. 2001) (explaining that the regular rate of pay is calculated by dividing all of the employee's total compensation for the workweek by the number of hours worked).

---

[4] The plaintiff testified that some of her tips were placed in a tip jar. The FLSA does not prohibit employers from requiring tipped employees to share tips with other tipped employees through a tip pool. 29 U.S.C. § 203 (m); Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir. 1998). There is no testimony that non-tipped employees also participated in the tip pool. See Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305, 308-09 (S.D. N.Y. 1998) (the tip credit did not apply where the manager, an employee who did not customarily and regularly receive tips, participated in tip pool).

23.     The plaintiff has demonstrated through her testimony at trial and the evidence in the record that she regularly worked in excess of forty hours per week during her employment at the restaurant and that the defendant failed to compensate the plaintiff at the overtime rate of one and one-half times her regular rate.

24.     The Court finds that the defendants are entitled to the tip credit. The Court credits the defendant's testimony that he explained the tip credit to his employees. See Pellon v. Business Representation International, Inc., No. 06-22738-CIV, 2007 WL 4463487, *3 (S.D. Fla. Dec. 17, 2007) (noting that "the FLSA does not require a rigorous explanation to employees about how the tip credit works."). No evidence was presented that the plaintiff was required to share her tips with non-tipped employees.

25.     Because the defendants are entitled to the tip credit, the Court finds that the plaintiff has not demonstrated that she was compensated at an effective hourly rate below the Florida minimum wage rate of  $6.40 ($3.38 for tipped employees) per hour in 2006 and $6.67 ($3.65 for tipped employees) in 2007 for her scheduled shifts. The Court does find that the defendants violated the minimum wage and overtime requirements of the FLSA in failing to compensate the plaintiff for the time she worked prior to her shift and after her shift.

26.     The plaintiff has shown that the defendants had actual or constructive knowledge that the plaintiff regularly worked more than 40 hours per week. The defendant or another manager was present at all times during the restaurant's operating hours. The defendants had a policy of requiring the plaintiff to record only a portion of her hours on time cards such that the plaintiff's total work hours (including overtime hours) were not

reported to Gevity. The defendants' policy also provided that a portion of the plaintiff's wages would be paid in cash. Based on these practices, the defendants knew or should have known that the plaintiff was regularly working overtime hours.

27.  The Court finds that the plaintiff was not fully compensated for overtime work. Overtime is generally calculated based on the employee's regular rate of pay. There are special provisions for calculating the overtime wage applicable to tipped employees. 29 C.F.R. § 531.60. Section 531.60(a) provides that:

> When overtime is worked by a tipped employee who is subject to the overtime provisions of the Act, his regular rate of pay is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which compensation was paid. . . . In accordance with section 3(m), a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer . . . and the cash wages . . . paid by the employer. Any tips received by the employee in excess of the tip credit need not be included in the regular rate.

29 C.F.R. § 531.60.

28.  The plaintiff was paid a cash wage of $3.38 per hour plus tips in 2006 and $3.65 per hour plus tips in 2007. Including the tip credit ($3.02), the plaintiff's regular hourly wage was $6.40 ($3.38 plus $3.02) in 2006 and $6.67 ($3.65 plus $3.02) in 2007.

29.  The Court finds that the plaintiff was compensated at her regular rate of pay for her scheduled hours. Thus, the Court will multiply the overtime hours the plaintiff worked by the overtime premium in calculating the plaintiff's overtime damages for her scheduled hours. The overtime premium is half the regular rate of pay. In the instant case, the overtime premium rate is $3.20 ($6.40 x .5) for 2006 and $3.34 (6.67 x .5) for 2007.

30.     The Court further finds that the plaintiff was not compensated for 1.5 hours (one hour prior to her shift and thirty minutes after her shift) on Monday and Tuesday and 45 minutes each day from Thursday through Sunday. With respect to these hours, the plaintiff is entitled to compensation at the overtime rate of $9.60 in 2006 and $10.01 in 2007.

31.     The plaintiff worked approximately 50 weeks at the restaurant. The plaintiff testified that during four of those weeks she did not work overtime (she was sick three times and during one week she visited her brother). Since the exact weeks the plaintiff did not work overtime are unknown, the Court will allocate two of those weeks in 2006 and two of those weeks in 2007. Thus, the Court concludes that the plaintiff worked approximately 40 weeks in 2006 and 6 weeks in 2007.

32.     Based on the evidence at trial, the Court finds that the plaintiff worked 21 hours (61 hours minus 40 hours)[5] in overtime each week during her regular shift at the restaurant for which she was compensated at her regular rate of pay and an additional 6 hours[6] per week for which she was not compensated at all.

33.     Therefore, the plaintiff is entitled to damages in the amount of **$5,773.20** [(40 weeks x 21 hours x 3.20 for 2006 plus 6 weeks x 21 hours x 3.34 for 2007) + (40 weeks x 6 hours x 9.60 plus 6 weeks x 6 hours x $10.01)].

---

[5] The Court finds that the plaintiff worked 7.5 hours on Monday and Tuesday and 11.5 hours from Thursday through Sunday during her shift. Thus, the plaintiff worked 61 hours per week, excluding lunch breaks.

[6] The plaintiff worked an additional 6 hours per week prior to or after her shift. On Monday and Tuesday the plaintiff worked 1.5 hours outside her shift. She worked one hour prior to her shift and half an hour after her shift. From Thursday through Sunday, the plaintiff worked 45 minutes each day after the end of her shift.

### Liquidated Damages and Attorney's Fees

34. The FLSA provides in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

35. Section 260 provides that:

> In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

36. "An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" C.D. Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir. 1987) (quoting Reeves v. Int'l Tel. & Tel. Corp., 616 F.2d 1342, 1352-53 (5th Cir. 1980), cert. denied, 449 U.S. 1077 (1981)).

37. An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. Id. (citing Reeves, 616 F.2d 1352-53). Thus, "the district court's discretion whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words,

14

liquidated damages are mandatory absent a showing of good faith." Id. (citing EEOC v. First Citizens Bank of Billings, 758 F.2d 397, 403 (9th Cir. 1985), cert. denied, 474 U.S. 902 (1985)).

38. To "avoid the mandatory nature of an award of liquidated damages" the employer must show both subjective good faith and objective reasonable grounds for belief of compliance." Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1573 (11th Cir. 1988).

39. The Court finds that the defendant and the restaurant have not satisfied their burden of showing both subjective good faith and objective reasonable grounds for belief of compliance with the FLSA overtime compensation requirement.

40. The defendant testified that he relied on the advice of Gevity concerning minimum wage and overtime compensation. However, the records submitted by the defendant to Gevity purposely underestimated the hours actually worked by the plaintiff. The Court finds that the defendant made a conscious effort to underreport the hours worked by the plaintiff so that overtime hours would not be reflected in the payroll records. Any reliance by the defendant and the restaurant on Gevity's advice based on the defendants' unreliable and inaccurate reporting of hours worked by the plaintiff is unreasonable.

41. Because the Court finds that the defendant and the restaurant have not met their burden of demonstrating good faith, liquidated damages are mandatory.

42. Accordingly, the plaintiff is entitled to full liquidated damages equal to the amount of unpaid overtime damages to which she is entitled.

43. Additionally, the Court finds that the plaintiff, as the prevailing party, is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## **FINAL CONCLUSIONS**

Based on the above findings of fact and conclusions of law, the Court finds that:

1. The plaintiff Odalys Perez is entitled to judgment in her favor and against the defendants, Palermo Seafood, Inc. d/b/a Fico Key West Seafood and Juan Zieggenhirt.

2. The plaintiff is entitled to overtime damages in the amount of $5,773.20, plus an equal amount in liquidated damages, equaling a total damages award of **$11,546.40**.

3. The plaintiff, as the prevailing party, is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b). The Court retains jurisdiction over attorney's fees and costs associated with the instant case, for which the plaintiff may file a separate motion in accordance with S.D. Fla. L.R. 7.3.

Final Judgment will be entered by separate order, in accordance with Fed. R. Civ. P. 58.

DONE AND ORDERED in Chambers at Miami, Florida, this **3rd** day of March, 2008.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record